We have three cases to be submitted today on oral argument. We'll hear the first two and then a brief recess and then finish with the third case. We begin with United States v. Jackson v. Times-Picayune. Ms. Mintz? May it please the Court, good morning, Your Honors. I'm Lori Mintz on behalf of the Times-Picayune LLC. In 2008— Now, as I understand the schedule in this case, your brief was filed four weeks before the defendant pleaded guilty. He pleaded guilty after we'd granted an expedited appeal and then you filed your brief—he pleaded guilty four weeks after you filed your appellate brief. Then Jackson filed its brief before the plea was entered, and you filed your reply shortly after the plea. So the whole landscape has changed greatly here. Am I correct on my chronology? I'll check the dates. I did not go back and check the dates, but I believe those dates are correct. Certainly the guilty plea was made during the briefing process. All right. You filed your brief four weeks before he pleaded guilty. So the whole landscape has changed. So, in a way, really about the only operative brief we have here is your reply brief. And, of course, whatever the appellee is going to say in response to that. So, long and the short is, why isn't this case moot? Well, there's two bases on which the case might be moot or is arguably moot, according to the appellee. The first is whether or not the case is moot on the basis that the Times-Picayune turned over the records and complied with the order, which is not the point that I understand you are getting at right now. The second basis is whether or not, by virtue of the guilty plea, Ms. Jackson has lost an interest in the matter, such that we don't have two active adversarial parties in the case. The first issue, the one you did not raise, is easily answered by the Church of Scientology case. In that case, the United States Supreme Court recognized the difference between privacy rights and materials and possessory rights and materials. But Ms. Jackson doesn't have any of the materials, does she? No, that's correct. How can you get an order against her to turn over materials? Well, but the United States is a party to this case, and the court has possession of the materials, and we have a right to get those materials back. Is there a proper methodology, federal rule of criminal procedure 41G, to get those from the court rather than suing Ms. Jackson to get records she doesn't have? We didn't sue Ms. Jackson. Well, bringing an action, a third-party action that you now say is not moot because you can get the records back and the person that you're trying to get the records back from doesn't have the records. And so that's not, in my view, a reason to keep. If she had them, I think you'd be in the Church of Scientology situation, but I don't see how you are when it's the court that has them and you have a procedure to get them from the court. Except that as to the times begin, I don't think this is a criminal proceeding. I think that this is a civil proceeding. We were hailed into court as a third party. But that rule could still benefit you. Have you demonstrated that it can't? Have you tried to get that kind of relief and been denied it because you're not a criminal defendant? No, Your Honor, we have not filed a motion under that rule. Now, isn't the real problem what you said on the second point, which is we really don't have an opponent for you? I mean, Ms. Jackson is here, I guess, and that's great, and we appreciate that. And I'd be here too if the Fifth Circuit wanted to hear from me, but I wouldn't have anything to say. I mean, she's pled guilty. She doesn't care about these records anymore. The sort of capable of repetition of any review tend to be against state actors that are going to have some sort of serial interest or even if you had an organization that kept showing up in criminal court or something like that. I don't see how she can even represent the other view is the problem. So we have kind of a one-sided case going here, and that's a concern. I think our response to that would be that, number one, the courts have recognized that the rule of mootness that arises from needing to have two actively involved litigants is a prudential consideration as opposed to a jurisdictional consideration. And when it comes to prudential considerations, the court has some flexibility, more so than it does when it comes to jurisdictional. Also, I would say that perhaps Ms. Jackson does still have an interest because she has not been sentenced yet, and there's always the chance that she would seek to invalidate her plea on the basis that it was not knowing and voluntary. Finally, I think— Did you raise that in your reply brief? No, I don't think we did, Your Honor. The final point I would make, though, is that the cases that are cited by Ms. Jackson are all 1983 civil rights cases where the plaintiff invokes the jurisdiction of the court and then somewhere along the way loses their interest in the proceeding. In this case, it's factually distinguishable because we didn't invoke the jurisdiction of the court. We were hailed into the court in order to produce our documents, and now there has to be a mechanism for us to get those documents back. And so if the court were to find under the Camreddi decision from the United States Supreme Court that the case is moot on the basis that there are no longer two actively involved parties, the remedy would be vacator of the district court's order. And in the Camreddi case, the court said when happenstance prevents that review from occurring, the normal rule should apply vacator, strips the decision below of its binding effect. So if it's true that the guilty plea renders the case unreviewable on the basis of mootness, I would submit that the rule has to be vacated because we were deprived of appellate review and because the district court's ruling was clearly erroneous. The district court ruled that we produced documents under Rule 17, and there are four legal principles that if you go through them and apply them to this case, demonstrate clearly that the ruling was incorrect. Rule number one, the right of free speech includes the right to speak anonymously. Rule number two, the right of free speech is at its apex when political speech or criticism of public figures is involved, and the fact that the speech might be found by some to be offensive does not diminish that right. The Supreme Court in the New York Times v. Sullivan case said that we have a profound national commitment to robust, wide-open, uninhibited debate even when that debate is caustic and unpleasantly striking. Even when that debate might be a prosecutor engaged in prosecutorial misconduct anonymously? And the right of free speech can yield to other considerations upon a proper showing, and under Rule 17, the proper showing is relevance and further that the order is not unreasonable and oppressive, and in assessing whether an order is unreasonable or oppressive, the court must balance First Amendment considerations against the criminal defendant's purported need for the information. In this case, in this instance, it certainly was needed since, in fact, an assistant U.S. attorney was engaged in these blogs engaging in prosecutorial misconduct. But in this case, the showing of relevance was not made and was, in fact, not made. How was it not made? It was not made because after an in-camera review, the judge said, well, these two people are not an assistant U.S. attorney. Well, it was not made because after the materials were ordered to be released, the judge actually made a finding that even if the court were to assume that the comments posted in response to the stories about Jackson were made by prosecutors, there is no indication that any of the comments biased the grand juries involved in the investigation or particularly the one that returned the indictment. So the district court made its own finding that even if you assumed that Aircheck and Jammer or any of the other commenters were federal prosecutors, there was no evidence to support that that impacted the grand jury proceedings. Those grand jury proceedings occurred or the indictment was returned five years after the commenting at issue. And so what we had said in the district court is that you need to do that analysis before you order the materials turned over. You need to decide whether if it turns out that Aircheck's a federal prosecutor or if it turns out that Jammer's a federal prosecutor, that's going to give rise to some claim for relief on the part of Ms. Jackson. The judge postponed that determination until after the anonymous speech rights of Aircheck and Jammer were invaded. And then after invading those rights, the district court said, oh, well, it doesn't make any difference anyway because there's no evidence that any of those comments had any effect on the indictment. And I would submit that a basic finding of relevance under Rule 17 requires you to say, well, if we find out that your supposition is correct and they're federal prosecutors, and of course we know in this case it wasn't correct, but if we assume that you're right, is that going to give rise to some relief to the criminal defendant? And ultimately the district court in this case found that it would not. I would also submit that the in-camera review angle of the hearing does not diminish the invasion. If you trace the right of anonymous speech back to its origin, one of its fundamental purposes was to protect anonymous speakers from being outed to the government. And so it is no consolation to tell an anonymous speaker, I'm only going to out you to the government. In this case, both the district judge, the magistrate judge, and personnel within the Department of Justice know the identity of Jammer 1954, and I would submit that if I was Jammer 1954, and I am not, but if I was, I might have real interest in not wanting Judge Wilkinson or Judge Lemon or personnel in the Department of Justice to know my identity. Well, this is interesting to me because a lot of times in these cases there is an effort by the sort of institutional party, which would be you, to let the anonymous people know so that they can intervene and protect their own interests. I mean, you are basically, and I understand why you're doing it, but you're basically arguing these anonymous people's views about whether they'd want the judge to see it or not. I wouldn't want the judge to see my attorney-client communications, but in Texas we had to turn that kind of stuff over for in-camera review all the time, and it was just considered how it's done and that the judge is able to put those kinds of things aside and keep them confidential. So anyway, but getting back to the point, was there an effort made to notify these anonymous people so that they could intervene anonymously to protect themselves? And I don't know whether any of this is in the record, but I will respond to your question. When you sign up for an online account on NOLA.com so that you can post comments, you are required to submit an email address, and that is the only contact information that you're required to submit. And so the Times-Speaking Union does send an email to whatever that address was used, and of course now that was an account that was used in 2008, and we are in 2013 when this is going on. And so whether that email was ever received by the speaker, we don't know, but those communications were sent out. But under the Enterline case, we nonetheless have standing to oppose or to assert the anonymous speech rights of the users. Right, but I think that on this point, I mean, the point of how far we take this in terms of how much we try to undo some in-camera review and how much that impinges on the privacy of some unknown person, I mean, I do think it factors into that. It's not a matter of whether you have standing, but just whether, how far we should continue a case that's where the active parties are not interested in it anymore. I mean, you're interested, but they're not. Well, we are interested. I mean, the district court has made a finding that we believe to be clear error. The district court, and furthermore, this is an issue that is likely to come up again. We have received several informal and formal. But then when it comes up, you'll have an adversary who will be fully arguing the point and maybe even intervening. I mean, I had cases as a state district judge where the anonymous person did intervene anonymously, and, you know, or in some form or fashion made themselves known as, you know, with some pseudonym or something like that. Nonetheless, we contend that we have a right to relief, and we have a right to have the district court's order reviewed. But you said it's a matter of prudential consideration. So why is it prudent for us to hear this case as opposed to waiting until you have a real adversary, not any disrespect to these opponents, but somebody with a real stake in it? Because I think the district courts would benefit from the guidance of knowing what criteria must be met. That's an advisory opinion. I don't believe it's an advisory opinion because I think we have a live controversy here. The court has possession of our materials, and we would like to have them back. And your materials are what? Our materials are roughly 1,000 pages of IP addresses and other contents of blogs, dates, times, and the IP addresses from which they were posted, as well as the registration information that was submitted by AirCheck and JAMA at the time they registered for their account. Okay. So if that's your interest, why isn't it more appropriate for you to bring a Rule 41G proceeding? Your Honor, that's not something that we ever considered doing in this case. I mean, the order was issued compelling us to turn over the materials. We filed a motion to quash that. That order, and it was denied, and we complied with the order rather than being held in contempt, and we have not considered filing a Rule 41. Okay, but my question was why wouldn't it be better for you to proceed in that way? Is there anything defective about that kind of proceeding? Wouldn't that be a more direct way of taking care of the dispute that you've just identified for Judge Barksdale, which is that the court has the documents? I'm not sure how we would initiate that proceeding, whether we would have to intervene in the Jackson matter. I mean, right now, we are not an intervener in that case. We're merely a party upon whom a subpoena was served or whether we would have to institute a separate proceeding. That's just not something that we've considered doing. Let me just ask you more practically. In my experience, courts are less and less keeping paper documents at all, and I know when I did in-camera reviews as a state district judge, we didn't keep the boxes of stuff forever. After the case was over, we'd say somebody come get them, meaning from the side that produced them, you know, with proper notice and that kind of thing. So is that, I mean, do we even know what the practice is here, whether maybe you just get them back after this whole thing is concluded and the time has passed for appeal and cert and whatever else, that you just get them back anyway? Because they don't want to keep them. Well, I don't know what Judge Wilkinson's practice on that. I know that the general practice of the clerk of court is to call upon parties to come and get their exhibits and materials, but these are not exhibits, and so I don't. Okay. If you don't even know whether you're just going to get them back anyway, then why are we even having this whole debate? We want the documents back now, not at some point in the future. Well, okay. All right. Your time has expired, and you've saved time for rebuttal. Thank you. Thank you, Ms. Manson. Mr. Castaigne. Your Honor, Eddie Castaigne representing Stacey Jackson. As I understand it, based on what the opposing counsel just said, Jackson has not been sentenced? She is being sentenced on Thursday, October 18th. She entered a plea guilty July 2nd. Her plea agreement was accepted by the court, filed in the record, and in the plea agreement it states very clearly she waives all of her rights, including 2255 review down the road except for ineffective assistance of counsel. So she has no more rights. She cannot do what Times-Picayune says it's so fearful that she will do, that somewhere down the road she's going to file something else, as she did with the other blogger, Kiefer, which she did do before all of this was resolved with a plea, and the court ruled in favor of Times-Picayune on that. So Ms. Jackson has exhausted all of her rights, pleaded guilty, and waived her rights. And I really do appreciate Judge Haynes' comment that the reason Ms. Jackson's lawyer is here is because he was asked to be here by the Fifth Circuit, and I agree. Ms. Jackson has no stake in this. She cannot give any relief. She has never seen the thousand pages, and neither have I. Neither has the public. Neither will you ever. I will never. And when I needed it, I couldn't see it. Magistrate Judge Wilkinson jointly with Judge Lemon, very unusual. They were signing orders jointly, and I think that was to save time because we were facing a July 14th trial date, and they were trying to avoid appeals from magistrate to judge, and they made it very clear that we could not see. This was a great compromise. There was a contest between the First Amendment and the Fifth and Sixth Amendments, and we had the Times-Picayune's right to their anonymous bloggers and to sell newspapers and blogging space and advertising space on the one hand. We had somebody whose life and liberty were at stake on the other and was approaching and being very heavily involved in the criminal justice system, had been indicted and facing trial. And so I thought I was entitled to all of it, carte blanche, give it to me. I'll give it to experts and find out who these bloggers are. The court said, no, we're not going to run that fast. We're going to bend over backwards to protect Times-Picayune's rights, and it did, and I've never seen those documents. There never was a Rule 41 motion. Do you know what the practice of the court is? In other words, if nothing, if this hadn't happened, this appeal to us, and she just pled guilty, done her thing, gotten her sentence, what would the normal course of business be for the court to do with these in-camera documents? What would happen to them? I can only speculate. When I've had in-camera documents with a court in the nature of exhibits, at the end of the day they're returned. Exactly. So if we just let nature take its course, so to speak, they'd get their documents. Well, and if I need documents that have been taken from a client saying a search warrant, I will follow Rule 41. That wasn't done. It's never been done. But one reason it's not being done is because Times-Picayune wants an advisory opinion by this court to overcome the authority that's now going to be in the federal supplement under the signature of Judge Lemon. That's the only reason Times-Picayune is here, because I can't give the relief. And they did file a mandamus with this court, which would be, okay, judge, order them to return, order this judge to reverse herself. And this court denied the mandamus. I didn't participate in those proceedings. It was done per curiam. It was done with—  And it states, a person aggrieved by an unlawful search and seizure, and they claim this was, or by the deprivation of property, which is their property, may move for the property's return. That's exactly right. It's nothing about having to be a party or the case having to be ongoing or anything else. And I've done that many times. It's usually pre-indictment, say after a search warrant. And there are no parties. Everybody's a third party. Everybody's not a party to a proceeding because there's no proceeding. So Times-Picayune obviously could have done that. But Times-Picayune never— Yes. This isn't to say they shouldn't get them back, but this isn't like my grandmother's letter to me that there's only one original thing and there's no copies of. This is something they printed out off a computer. I mean they have the information. It's not like they need the information. It's not—sometimes there are physical things. Somebody takes my scrapbook or something from high school, and I want my scrapbook back. This isn't like that. That's not to say they shouldn't get them back, but it's not as if they're unable to continue on because they don't have these because they're just a printout off a computer. For instance, a doctor who has a search warrant executed at his office and he needs the records to continue to treat his patients, and if the government doesn't return those documents, which it usually does, then you would follow Rule 41. That's not the case here. Times-Picayune has those records. They have seen the records. I have not. Ms. Jackson has not. We were not given the opportunity to do our own investigation to find out who the bloggers were. We had to take and rely on the processes of Judge Wilkinson. However, he made the determination that Jammer was not a government person. We have no choice but to rely on that. And when he said air check, the information is too old, we can't determine, we had no ability to provide those records to an expert and make the determination. We had to rely on the court. And as I appreciate what your opponent said, and I know you haven't seen the documents, they don't have, like, you know, Katharina D. Haynes at such-and-such address, so-and-so, so-and-so. They have, you know, and this isn't my email address, but, you know, happywoman at AOL.com. That's what they're saying is they're identifying information. I don't know, Judge. I've never seen it. What they said in their pleadings when they were fighting us on this was that, well, you know, you can't resolve it with this one subpoena to us anyway. It will lead to other subpoenas to people that are, to entities that are disclosed within these thousand pages. And so I said, fine, bring it on. I'll follow up with another subpoena. But I never got to see it. It's my understanding that some bloggers, bold face, use their names, and we could see who these people are and trace it. Others use names out of a coffeehouse, a Wi-Fi address, and maybe you can't find out. Well, and I think that's why the judge couldn't figure out who the other person was. Well, the judge said not enough information. The information was too old for air check. Then we filed a third one for Kiefer, which was very, very telltale as to who it was, but the court, and this was shortly before trial, the court said that's enough. You haven't shown us enough that this is related to government speak or identity of a government person. We're not going to even order Times-Picayune to produce that. So the court was, they won. They won below. They were not prejudiced. They were not harmed. But yet they don't like the precedent that was created that, yes, under certain circumstances, Rule 17C will apply against Times-Picayune, and we will order things in camera. And they don't like that. That's why they're here today. If you were their attorney, you would feel the same way. You can understand that they have an interest that they wish to protect. There's nothing unprofessional about their trying to get this done. Judge, I'm a criminal lawyer. I don't think anything is, you know, everybody has a cause or a mission that may not be popular. But, yes, they did have an interest, a First Amendment interest, but it paled with the Fifth and Sixth Amendment for someone who had been indicted. This wasn't pre-indictment. Someone who had been indicted received a big, fat judgment from this court in the Bowen case, which said that there was horrible prosecutorial misconduct, egregious, and that prejudice was presumed. You didn't even have to prove it under the Albrecht footnote because it was so egregious. And I was coming under that authority. So I followed up with that and started the process going to find out what was in this Horne report. But you're saying all of that doesn't matter because we should say this is moot, right? It's entirely moot. I mean, you seem to be sort of arguing the merits. I mean, actually proving me wrong that you seem to be much more passionate for your side than I am. I'm completely passionate. I think Judge Lemon was wrong when she denied my ultimate motion to dismiss. Right. And I will say this. I don't think Ms. Mintz is being unprofessional at all, Judge Smith. She does have a cause. She does have a mission. But when it's compared to someone who is facing jail, a conviction, and there has been a declaration by this court that the same U.S. Attorney's Office was guilty of prosecutorial misconduct, we have the greater rights to follow up and run every lead possible. But every lead led to the Tom Spicchione. We couldn't get it anywhere else. Nixon could not have been more applicable in that instance. And both judges, magistrate judge and the district judge, agreed. And they just didn't give a knee-jerk reaction.  No, if it turns out that Aircheck and Jammer are government people, then that would establish a pattern of unconstitutional behavior that would be actionable. That's right out of the December 6th order by Magistrate Wilkinson, which was upheld by Judge Lemon. And it's also interesting, we didn't come up with the names Aircheck and Jammer. Those were Judge Wilkinson's names. It came up during our argument. I never heard of them. Then he put it in his order of December 6th. So my natural follow-up was to do a Rule 17c on that, and the government said we take no position, so it was ex parte. And then that's when we met with the motion to quash, and Tom Spicchione has fought ever since. And to this day, Tom Spicchione has prevailed. We never got the documents. Okay, are you asking us to find this moot or not? Absolutely. We have a motion pending for mootness. It's absolutely moot. If you want me to get to the merits, I am more than passionate about the merits. Okay. Has your client shown any indication of seeking to withdraw her guilty plea? None. Has the issue of these documents been any part of the sentencing process? Have you all filed any objections to the PSR based on this or anything? None. Is it going to be part of her allocution or your argument to the court in sentencing these documents? Yesterday we filed our sentencing memorandum in motion for a downward variance and downward departure, and I do have a paragraph asking the court in mitigation to consider her victimization of Sal Pericon's blog, the Chocolate City blog. But not reviewing these documents? No. We have not attacked or tried to withdraw the guilty plea and will not. Well, are you asking the judge to rely on these in-camera documents in mitigation of her sentence? No, because the document that we asked the judge to rely on was the public-admitted document on the Chocolate City, the racial blog. What we're saying is Ms. Jackson, African-American female, worked in the Nagan administration, had been attacked by the blogs at the very time that the grand jury was meeting and reviewing her case. So we ask the court, please consider that in mitigation. Not part of this. We're not using it in any way that Tom Spicune says that we could. We're not. We haven't. She's being sentenced next week, and she's waived all of her rights. This is completely moot. We've cited cases that are very clear about mootness. You said you have a pending motion urging mootness. I'm sorry. No, no, sir. What we have is, yes, in this court, my co-counsel filed a motion to moot this appeal, to dismiss this appeal for being moot. It was answered by Tom Spicune, and a reblime memorandum was filed by my co-counsel. So those motions are here. I have not seen that. It's my understanding that the court did not rule on it. And I could defer to Ms. Pierce on that. I was just going to say it was carried with the case. Carried with the case. So it's never been ruled upon. I wish it had been. Then Judge Haynes would not have ordered me to be here today. I don't have that kind of power. No, I understand, Judge. But, anyway. I just said that I don't want to fault you for having shown up when the Fifth Circuit sets oral argument, even if you don't feel like you have a stake anymore. Right. My dad always taught me it's professional to come. No, I would not. I appreciate you doing that. I would not disregard any notice of any court, and we did file extensive pleadings in the Fifth Circuit through appellate counsel as well as briefs. So we have done everything asked by the court. And the whole time I'm doing it, I'm thinking, why do we have to do this? Now, I am passionate about the merits, but we've waived the merits. When she signed the plea agreement, it's over. So all we have to do now is be sentenced next week. And it will have nothing to do with these proceedings or anything that Thomas McEwen is raising. But if the court does get to the merits, I ask the court to greatly consider the balance that Judge Lemon and Judge Wilkinson faced and resolved. And it did not go all one way. It wasn't a complete denial in favor of Thomas McEwen, granting in my favor. It balanced it. It said, let us see the documents in camera, and then we will make a determination, and it resolved it in favor of Thomas McEwen. They won below. They just won an opinion by the Fifth Circuit that they can use in future cases. And what's interesting, Judge, Thomas McEwen has filed many times oppositions to documents under seal. In the Bowen case, document 1172, Thomas McEwen files a motion to unseal everything. Give us the horn reports. Give us all the evidence you have that's sealed up on prosecutorial misconduct. They talk out both sides of their mouth. You know what I'm saying. The nature. Right. If the court has any questions, I'm happy to answer. Thank you, Mr. Castaign. Thank you. Ms. Mintz, you're safe to go to rebuttal. Thank you. I just have a couple of points on rebuttal. The first is on Mr. Castaign's last point. The Times-Speaking Union often moves to unseal court proceedings on the basis of the first-minute right of access. That deals with court records, and court records are presumed to be open to the public. That's quite different than— I mean, I think that's— All right. The second point that I want to make is going to the merits, and I do think the merits of the underlying order is the easier issue. Because the district court made an express finding that the identity of Aircheck and Jammer was ultimately irrelevant, and so I think because the district court itself found it was irrelevant, the requirements of Rule 17 were lacking, and the order should have never been issued in the first place. The harder issue, of course, is the mootness issue. Under Rule 41, there is a requirement that it is an unlawful search and seizure, that a party who believes that there—or is aggrieved by an unlawful search and seizure may seek this relief. But the district court already made a finding that they did not believe it to be an unlawful search and seizure. We told them in our motion to Quash that we thought that we shouldn't have to turn the documents over, and so it seems to me that it would have been futile to ask the district court again— It doesn't. It is in the alternative. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property. I'm not so sure that you have to show it was an unlawful search and seizure to get your property back. But the district court already found— Why would the district court even want your property? I mean, I'm sure they'd like to get rid of all this paper. I mean, what's going to happen when this is over is you're going to get it back. And until this is over, you're claiming it's a live controversy, you shouldn't get it back, because if somehow the contents of these documents are relevant, we have to look at them. Except no, because the court has already found they are not relevant, and under the grand jury case— Okay, then why are we here? If you just sat there, you would get your documents back, even if you didn't file this 41G. So I don't even understand. You've kept it alive, which is why the documents are still sitting at the district court. They're waiting for the mandate, and then they'll give them back to you, and you really haven't shown to the contrary. And I don't know whether they would— In the meantime, nothing is happening to you because you have a computer with all of this information on it. Let's ask it this way. I'm not trying to cut off Judge Haynes' question, but let's try this. Suppose we were going to rule in your favor here. It's not moot, and we were going to write an opinion. What are the one or two or three points that you would like to see us establish in that opinion? That before ordering the production of information that would infringe upon an anonymous speaker's right to speak anonymously, the court must make, before the order is issued, must make a finding that the material is relevant. And what that means is that they must make a finding that if the identity of the speaker is known, it will give right to some claim for relief on the part of the criminal defendant. That is the rule that we believe the district court violated. If the district court is to find, though, that the case is moot for any of the reasons that you've identified, then I would submit that the remedy under Camretta is not dismissal of our appeal, but vacator of the district court's order. Thank you. All right. Thank you, Ms. Mance. Your case is under submission. Next case.